IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERCHANTS DISTRIBUTORS, LLC *and,*
CAPITAL RESCOURCES, LLC,

    Plaintiffs,

v.

HAROLD FRIEDMAN INC., d/b/a
FRIEDMAN'S FRESHMARKETS,

    Defendant.

18cv133
ELECTRONICALLY FILED

## MEMORANDUM OPINION

Plaintiffs, Merchants Distributors, LLC ("MDI") and Capital Resources, LLC ("Capital") (together, "Plaintiffs"), initiated this breach of contract and declaratory judgment action by filing a Complaint against Defendant, Harold Friedman Inc. ("Defendant" or "HFI"), on January 26, 2018. (ECF 1). Defendant filed an Answer, Affirmative Defenses and Counterclaims for breach of contract, breach of confidential relationship, and tortious interference. (ECF 9).

Presently before the Court is Plaintiffs' Motion to Dismiss Defendant's Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) with a brief in support (ECF 17 and 18). Defendant filed a Response in Opposition (ECF 21), to which Plaintiffs filed a Reply. (ECF 22). For the reasons that follow, Plaintiffs' Motion to Dismiss will be granted, and Defendant's Counterclaims will be dismissed.[1]

---

[1] Jurisdiction in this matter is predicated upon 28 U.S.C. § 1332(a)(1), given that Plaintiffs both are North Carolina limited liability corporations, Defendant is a Pennsylvania corporation, and the amount in controversy exceeds $75,000.

1

## I. STANDARD OF REVIEW

For purposes of a Rule 12(b)(6) motion to dismiss, claims and counterclaims are treated equivalently and therefore the standard of review is the same. *Red Bend Hunting & Fishing Club v. Range Resources—Appalachia, LLC*, No. 4:16-CV-00864, 2016 WL 7034686, at *4 n.35 (M.D. Pa. Dec. 2, 2016). Under Rule 12(b)(6), a counterclaim must be dismissed for "failure to state a claim upon which relief can be granted." Although detailed factual pleading is not required, a counterclaim must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a claim:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted). The final step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013).

In determining the adequacy of a counterclaim, the Court must accept the factual allegations as true and draw all reasonable inferences in the light most favorable to the defendant.

2

*GE Capital Mortg. Servs., Inc. v. Pinnacle Mortg. Inv. Corp.*, 897 F. Supp. 854, 860 (E.D. Pa. 1995). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the claim. *See Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

This Court may not dismiss a counterclaim merely because it appears unlikely or improbable that the defendant can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a claim that provides adequate facts to establish "how, when, and where" will survive a motion to dismiss. *Fowler*, 578 F.3d at 212. In short, a motion to dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him or her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II. **BACKGROUND**

In accordance with the foregoing standard of review, the following facts are derived from Defendant's Counterclaims and are accepted as true solely for the purpose of adjudicating Plaintiffs' Motion to Dismiss.[2]

Defendant admits that it entered into a number of contractual agreements with Plaintiffs on October 14, 2016, regarding the provision of wholesale grocery services as well as the lending

---

2   In deciding a Rule 12(b)(6) motion, a court only may consider the Complaint, exhibits attached to the Complaint and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may consider a "document integral to or explicitly relied upon in the complaint" without converting a motion to dismiss into a summary judgment motion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

3

of money.[3] (ECF 1, ¶ 7; ECF 9, ¶ 7). Plaintiffs sued Defendant for breach of contract after Defendant allegedly failed to make payments that were due under the agreements. *See* ECF 1, ¶¶ 7-21. Defendant filed counterclaims against Plaintiffs for breach of contract and breach of the covenant of good faith and fair dealing, claiming that the agreements related to "resets"[4] of Defendant's grocery stores that occurred between August 31, 2015, and September 15, 2015. *See* ECF 9, ¶¶ 43, 45, 68-70. Defendant alleges that Plaintiffs did not perform the resets competently, which resulted in problems for Defendant's grocery business, including "serious cash flow issues." *See id.* ¶¶ 46-52. In addition, Defendant claims that Plaintiffs began to require "pre-wire payment" before making product deliveries, which purportedly added to its financial problems. *Id.* ¶ 54. Defendant also filed counterclaims against Plaintiffs for breach of a confidential relationship and tortious interference, alleging that Plaintiffs shared confidential information with a potential purchaser and interfered with its efforts to sell the business to third parties. *Id.* ¶¶ 59, 75-77, 81, 84. Defendant claims that it suffered millions of dollars in damages as a result of Plaintiffs' conduct and had to close its business in January 2018. *Id.* ¶¶ 61-62.

## III. DISCUSSION

### A. Choice of Law

The contractual agreements attached to Plaintiffs' Complaint each contain a provision specifying that the agreement shall be governed by and construed in accordance with North

---

3    The agreements are attached to Plaintiffs' Complaint and include the following: (1) Product Purchase Agreement pursuant to which HFI agreed to purchase certain products and services from MDI for its grocery stores in exchange for Capital's loan to HFI; (2) a Security Agreement wherein HFI granted MDI a security interest in certain collateral to secure HFI's obligations to MDI; (3) a Promissory Note whereby Capital loaned HFI $1,700,000; and (4) a Security Agreement wherein HFI granted Capital a security interest in certain collateral to secure HFI's obligations to Capital.

4    According to Defendant, a "reset" involves a grocery wholesaler providing a customer with its product planogram, along with advertising and pricing for the products. (ECF 9, ¶ 44).

4

Carolina law.[5] *See* ECF 1-2 at 7; ECF 1-3 at 9; ECF 1-10 at 2; ECF 1-11 at 9. Despite the choice of law provision, the parties analyzed Defendant's breach of contract counterclaim under both Pennsylvania and North Carolina law, but they analyzed Defendant's tort counterclaims under Pennsylvania law. Therefore, the Court must begin its analysis by determining what law applies to the issues presented by the parties. As a federal court sitting in diversity, we must apply the choice of law rules of the forum state, Pennsylvania. *See Specialty Surfaces Int'l., Inc. v. Continental Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941)).

Pennsylvania courts generally apply the state law that the parties have agreed upon. *See DL Resources, Inc. v. FirstEnergy Solutions Corp.*, 506 F.3d 209, 216 (3d Cir. 2007) (citing *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002) ("In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions.")). The Court sees no reason to depart from this general rule and will honor the parties' agreement that North Carolina law applies to the contract-based claims.

A contract's choice of law provision "do[es] not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship." *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 191 (E.D. Pa. 2015) (quoting *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994)). Courts analyze choice of law provisions to "determine, based upon their narrowness or breadth, whether the parties intended for the agreement to encompass all elements of their association." *Grimm v. Citibank (S. Dakota), N.A.*, Civil Action No. 08-788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) (quoting

---

5     The only exception concerns the two Security Agreements, which provide that North Carolina law applies, subject only to the laws of Pennsylvania "that of necessity must apply to methods of foreclosure directly affecting security interests in the Collateral." *See* ECF 1-3 at 9; ECF 1-11 at 9. That provision is inapplicable here.

5

*Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp. 151, 157 (W.D. Pa. 1992)). For example, the court in *Jiffy Lube* found that the use of "this agreement" in the choice of law provision at issue demonstrated its restricted scope and its applicability only to the contract claims at issue. *Jiffy Lube*, 848 F. Supp. at 576.

Based on the foregoing principles, the Court finds that the agreements between the parties here are narrowly drawn because the language in each choice of law provision speaks only to the enforcement of each of the agreements themselves, and not to all matters concerning the parties. Accordingly, the contractual choice of law provisions do not apply to Defendant's tort counterclaims.

Where, as here, a contractual choice of law provision does not apply to particular claims, the Court must separately analyze the remaining claims to determine the law that applies. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case."). The first step is to determine if there is an actual or real difference between the potentially applicable laws. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If no difference exists, no further analysis is necessary, and the law of the forum state applies. *Id.; see also, State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 185 n.1 (3d Cir. 2006) ("[B]ecause there is no conflict between the laws of other states that may have an interest . . . a court shall apply the law of the forum state.").

After reviewing the relevant laws of Pennsylvania and North Carolina, the Court finds that North Carolina courts would not treat Defendant's tort counterclaims differently than courts in Pennsylvania. With respect to tortious interference, both Pennsylvania and North Carolina law require that a claimant allege the existence of a contract (or prospective contract) between the

6

plaintiff and a third party, purposeful action by the defendant which induced the third party not to perform the contract, the defendant did so without justification, and the plaintiff was injured as a result. *See Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997); *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988); *Beck v. City of Durham*, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002). As to a claim for breach of a confidential relationship, both Pennsylvania and North Carolina law are reluctant to find the existence of a confidential relationship when the parties deal on equal terms in the context of an in arm's length business transaction. *See Frowen v. Blank*, 425 A.2d 412, 416-17 (Pa. 1981); *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 391 S.E.2d 831, 833 (N.C. Ct. App. 1990). Because there is no appreciable difference between the laws of Pennsylvania and North Carolina with respect to Defendant's tort counterclaims, the Court will apply Pennsylvania law to those claims.

## B. Breach of Contract / Breach of Covenant of Good Faith and Fair Dealing

According to Defendant, "[a]t the time of entering into the Contract, the Plaintiffs agreed to perform a reset of the Defendant's stores" and to provide other store support, but Plaintiffs breached their agreement to provide those services. (ECF 9, ¶¶ 68, 69). Defendant further alleges that Plaintiffs breached the covenant of good faith and fair dealing by failing to properly perform a reset of its stores, failing to provide competent advertising, accurate pricing and merchandising support, placing Defendant on "prewire," limiting deliveries to its stores, and delivering incorrect or damaged products. *Id.* ¶ 70. These allegations are insufficient to state a plausible claim for breach of contract and breach of the covenant of good faith and fair dealing.

### 1. Breach of Contract

To state a claim for breach of contract under North Carolina law, a claimant must allege that a valid contract existed between the parties, that the opposing party breached the terms

7

thereof, the facts constituting the breach and that damages resulted from such breach. *Morgan's Ferry Prods., LLC v. Rudd*, 18 F. App'x. 111, 112 (4th Cir. 2001) (citing *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 446 (N.C. Ct. App. 1997)). Here, Defendant admits that it entered into the contractual agreements with Plaintiffs that are attached to Plaintiffs' Complaint. *See* ECF 1, ¶ 7; ECF 9, ¶ 7. However, Defendant fails to allege that Plaintiffs breached a contractual obligation contained in the agreements or allege facts constituting the purported breach. To illustrate this point, Defendant claims, "[a]t the time the parties entered into the *Agreements at issue* herein, the Plaintiff had performed what is known as a 'reset' in the grocery store industry." (ECF 9, ¶ 43) (emphasis added). Defendant subsequently claims, "[a]t the time of entering into *the Contract*, the Plaintiffs agreed to perform a reset of Defendant's stores." *Id.* ¶ 68 (emphasis added). As these allegations demonstrate, Defendant fails to allege which contract Plaintiffs breached, nor which contractual obligation Plaintiffs purportedly failed to fulfill.[6] *See Tasz, Inc. v. Indus. Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 682 (W.D.N.C. 2015) ("A basic element of a claim for breach of contract is a showing that the party accused has failed to fulfill an obligation owed.").

In an attempt to salvage its breach of contract counterclaim, Defendant argues that the parties' contractual arrangement is controlled by the Uniform Commercial Code, and thus course of performance, course of dealing and usage of trade are "part and parcel of the contract at issue." *See* ECF 21 at 5-7. According to Defendant, the reset, pricing, payment terms, advertising, and

---

6     Although Defendant's Counterclaim does not allege any contractual obligation which Plaintiffs purportedly breached, it asserts in its Opposition Brief that "Plaintiffs breached the express terms of paragraph 2(d) of the Product Purchase Agreement" concerning the time frame for wire payments by requiring pre-payment before goods were delivered. *See* ECF 21 at 7. However, a party may not amend its claim through argument in briefing. *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp. 2d 533, 542 (E.D.N.C. 2008) (finding that a plaintiff "cannot use her brief to amend her complaint"). Further, to the extent that Defendant claims that Plaintiffs "breached their agreement to provide a reset," *see* ECF 9, ¶ 69, the agreements attached to Plaintiffs' Complaint do not contain any provision concerning a "reset" or impose duties regarding the same.

shipping schedules all have certain standards in the grocery store industry, which Plaintiffs breached. *Id.* at 7. While certain standards may exist in the grocery store industry, the Counterclaim contains no allegations identifying them, nor describing how Plaintiffs purportedly breached them. In addition, Defendant has not alleged facts concerning a course of performance between the parties, nor has it alleged a sequence of conduct concerning the parties' previous transactions which establish a course of dealing, to support a breach of contract claim on either of those bases. For all of these reasons, Defendant has failed to state a plausible breach of contract claim.

### 2. Breach of Covenant of Good Faith and Fair Dealing

Defendant also has failed to state a claim for breach of the covenant of good faith and fair dealing. Under North Carolina law, every contract contains "an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985) (citation omitted). Where the parties have executed a written contract, an action for "breach of the covenant of good faith and fair dealing is part and parcel of [a] claim for breach of contract." *Lord of Shalford v. Shelley's Jewelry, Inc.*, 127 F. Supp. 2d 779, 787 (W.D.N.C. 2000). Accordingly, when a court dismisses a breach of contract claim, it likewise rejects any claim for breach of the covenant of good faith and fair dealing contained in it. *SunTrust Bank v. Bryant/Sutphin Props., LLC*, 732 S.E.2d 594, 603 (N.C. Ct. App. 2012) (holding that it "would be illogical . . . to conclude that plaintiff somehow breached implied terms of [a] contract[ ]" when the court had earlier rejected the breach of contract claim). Therefore, Defendant's failure to state a plausible claim for breach of contract is fatal to its claim for breach of the covenant of good faith and fair dealing, and the contract claims will be dismissed.

## C. Breach of Confidential Relationship

The Counterclaim alleges that "Plaintiffs entered into a confidential relationship with Defendant when they entered into the various agreements at issue." (ECF 9, ¶ 75). Defendant claims that Plaintiffs breached this relationship by contacting Defendant's competitors and providing confidential information to a potential purchaser in an effort to sell Defendant's business. *Id.* ¶¶ 77, 81. Defendant alleges that Plaintiffs' conduct interfered with its marketing efforts and reduced the value of its business. *Id.* ¶ 82. The facts, as pled, do not support a plausible claim for breach of a confidential relationship.

Under Pennsylvania law, a confidential relationship exists "as a matter of fact wherever one person has reposed a special confidence in another to the extent that the parties do not deal with each other [on] equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *Truver v. Kennedy*, 229 A.2d 468, 474 (Pa. 1967). "The general test for determining the existence of such a relationship is whether it is clear that the parties did not deal on equal terms." *Frowen*, 425 A.2d at 416.

Contractual relationships do not ordinarily give rise to confidential or fiduciary relationships between the parties. *Onconome, Inc. v. Univ. of Pittsburgh*, No. 09cv1195, 2009 WL 5064481, at *16 (W.D. Pa. Dec. 17, 2009) (citation omitted). A confidential or fiduciary relationship does not exist merely because one party relies on another party's superior skill in providing a particular service. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002). "[T]he critical question is whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' on one side or 'weakness, dependence, or trust, justifiably reposed' on the other side." *Id.* (citing *Basile v. H&R Block, Inc.*, 777 A.2d 95, 101 (Pa. Super. Ct. 2001). A confidential relationship is "marked by

10

such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power." *Id.* (citing *Basile*, 777 A.2d at 102).

Defendant fails to allege facts that give rise to a confidential relationship between the parties. There are no allegations from which one could reasonably infer that Defendant relied on Plaintiffs in a confidential capacity, rather than as part of an arm's length commercial relationship. *See Bruno v. Bozzuto's, Inc.*, 850 F. Supp. 2d 462, 468 (M.D. Pa. 2012) (finding no confidential relationship existed between supermarket and its wholesale supplier after the parties had entered into a purchase supply agreement, even though supplier allegedly re-tagged supermarket's inventory, removed equipment from its store and interfered with supermarket's ability to obtain refinancing, since their arrangement was an arm's length business transaction). For example, there are no allegations suggesting that the parties dealt with one another on unequal terms or that Defendant surrendered any control over its business dealings to Plaintiffs. In sum, the factual allegations do not support an inference of "overmastering dominance" on Plaintiffs' side or "weakness, dependence, or justifiable trust" on Defendant's side. Therefore, Defendant's claim for breach of confidential relationship will be dismissed with prejudice.[7]

### D. Tortious Interference

Under Pennsylvania law, the elements of a claim for tortious interference of a contract, whether existing or prospective, are the following:

> (1) the existence of a contractual, or prospective contractual relationship between the complainant and a third party; (2) purposeful action on the part of the

---

7   To the extent that Defendant bases its claim on the parties' contractual relationship, alleging that Plaintiffs "entered into a confidential relationship with the Defendant when they entered into the various agreements at issue," (ECF 9, ¶ 75), Defendant's breach of confidential relationship claim is barred by the gist of the action doctrine, which forecloses a tort claim that arises solely from the breach of contractual duties without any separate event give rise to the tort. *See Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). For this reason, as well as those discussed above, the claim will be dismissed with prejudice.

> defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland*, 700 A.2d at 985).

Here, Defendant fails to plead facts which could legally support the first element of a tortious interference claim. Defendant broadly claims that Plaintiffs tortiously interfered with its prospective contractual relations by contacting third parties and attempting to sell Defendant's business. (ECF 9, ¶¶ 59, 84). However, Defendant has failed to allege that a contractual relationship existed between itself and a third party. Defendant also has failed to allege the existence of a prospective contractual relationship. A prospective contractual relationship is "something less than a contractual right, something more than a mere hope." *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979). It is a "reasonable likelihood or probability" that contractual relations will be realized. *Id.* (citing *Glenn v. Point Park Coll.*, 272 A.2d 895, 898-99 (Pa. 1971). To state a plausible claim, Defendant's "pleadings must identify specific business relationships suffering as a result of [Plaintiffs'] interference." *Applied Tech. Int'l, Ltd. v. Goldstein*, No. Civ. A. 03-848, 2004 WL 2360388, at *6 (E.D. Pa. Oct. 20, 2004) (citing *Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 578 (E.D. Pa. 2002) (dismissing a tortious interference claim where the plaintiff failed to identify "a single past, present or prospective customer . . . with whom it had a prospective contract which did not finalize because of defendant's actions").

Defendant fails to plead that any prospective agreement was being contemplated between itself and a third party which Plaintiffs impeded. Rather, Defendant generally claims that Plaintiffs' contact with an unidentified third party purportedly interfered with its effort to sell its

12

business. Such broad speculation is insufficient to state a viable claim. *See Gilmour v. Bohmueller*, No. Civ.A. 04-2535, 2005 WL 241181, at *14 (E.D. Pa. Jan. 27, 2005) ("Conclusory speculation that plaintiffs might have entered into a business or contractual relationship with unspecified third parties is insufficient to state a claim for tortious interference."). Accordingly, Defendant's counterclaim for tortious interference will be dismissed.

## IV. **CONCLUSION**

Defendant has failed to state a plausible claim for relief under any theory, thus Plaintiffs' Motion to Dismiss Defendant's Counterclaims will be granted.

Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "a court may deny leave to amend when such amendment would be futile"—i.e., "the amended complaint would not survive a motion to dismiss for failure to state a claim." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citations omitted).

For the reasons discussed above, amendment of Defendant's counterclaim for breach of a confidential relationship would be futile. *See In re Burlington Coat Factory*, 114 F.3d at 1434 (a district court may exercise its discretion and deny leave to amend on the basis of futility). However, the Court will permit Defendant to amend its counterclaims for breach of contract and tortious interference to the extent an amendment is capable of curing the deficiencies discussed herein. If Defendant elects to file an Amended Counterclaim, it must do so by April 17, 2018.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

Date: April 5, 2018

cc: All ECF registered counsel

13