IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERCHANTS DISTRIBUTORS, LLC, *and*
CAPITAL RESOURCES, LLC,

          Plaintiffs,

v.

HAROLD FRIEDMAN INC., *doing business
as* FRIEDMAN'S FRESHMARKETS,

          Defendant.

18cv0133
ELECTRONICALLY FILED

**MEMORANDUM OPINION**

Presently, there are four motions pending before the Court, all filed by Plaintiffs, in this breach of contract case: (1) Plaintiffs' Motion to Preclude Expert Report of John Dagnon, doc. no. 62; (2) Plaintiffs' Motion for Summary Judgment as to Affirmative Claims, doc. no. 65; (3) Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims, doc. no. 68; and (4) Plaintiffs' Motion to Exclude Expert Report of Bill Bolton. Doc. no. 72.

Defendant has filed Responses and Briefs in Opposition to all four of the aforementioned Motions. See: (1) Defendant's Response to Plaintiffs' Motion to Preclude Expert Report of John Dagnon, doc. no. 75, and the corresponding Brief in Opposition filed at doc. no. 76;
(2) Defendant's Response to Plaintiffs' Motion for Summary Judgment as to Affirmative Claims, doc. no. 84, and the corresponding Brief in Opposition filed at doc. no. 86;
(3) Defendant's Response to Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims, doc. no. 79, and the corresponding Brief in Opposition filed at doc. no. 80; and
(4) Defendant's Response to Plaintiffs' Motion to Exclude Expert Report of Bill Bolton, doc. no. 77 and the corresponding Brief in Opposition filed at doc. no. 78.

The Court has given careful consideration to each of the four Motions and Briefs in Support as well as the Responses and Briefs in Opposition. The Court has also reviewed the relevant documents attached to the Parties' pleadings as well as those set forth in the Appendices the Parties prepared in connection with the Motions and Responses. Finally, the Court has considered the two Joint Concise Statements of Material Facts, doc. nos. 83 and 85, and Plaintiffs' Reply Briefs filed as to: (1) their Motion to Preclude Expert Report of John Dagnon (doc. no. 89); (2) their Motion to Exclude Expert Report of Bill Bolton (doc. no. 72); and (3) their Motion for Summary Judgment on their Affirmative Claims as well as their Motion for Summary Judgment as to Defendant's Counterclaims. Doc. no. 93.

For the reasons set forth at length herein, the Court will grant Plaintiffs' Motion for Summary Judgment on their Affirmative Claims and Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims. These rulings render the two Motions relating to the expert reports as moot, and thus, those Motions will be denied.

## I. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute

"to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for Aged*, 659 F.3d 282, 290 (3d Cir. 2011).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – *i.e.*, depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof for the claim in question. *Conoshenti v. Public Service Elec. & Gas Co*, 364 F.3d 135, 140 (3d Cir. 2004), quoting *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n. 2 (3d Cir. 2001), quoting Celotex, 477 U.S. 317, 325 (1986).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pennsylvania Transp. Authority*, 479 F.3d 232 (3d Cir. 2007), citing *Anderson*, 477 U.S. at 255.

## II. FACTUAL BACKGROUND

The following facts are relevant and not disputed unless noted otherwise.

Plaintiff-MDI is a wholesale distributor of items to grocery store. Defendant operates or operated grocery stores in Butler County, Pennsylvania. A copy of the product purchase agreement executed by Plaintiff-MDI and Defendant (the "MDI-PPA") and the security agreement executed by Plaintiff-MDI and Defendant, both dated October 14, 2016 and were attached to the Complaint. See doc. no. 1-2 and doc. no. 1-3, respectively.

In addition to the MDI-PPA and the security agreement that Plaintiff-MDI and Defendant executed, Defendant also signed a promissory note ("Note") on October 14, 2016, in favor of Plaintiff-Capital. Defendant and Plaintiff-Capital also entered into a security agreement on October 14, 2016.

Based on the Complaint and the Answer filed in this matter (see doc. no. 1 and doc. no. 9), the main issue is which party, if any, breached the aforementioned agreements. Plaintiffs contend Defendant breached these agreements by failing to timely meet payments. Doc. no. 1. Defendant, though its affirmative defenses and counterclaims, asserts that Plaintiffs performed a "reset" – an "expected service of a grocery wholesaler" such as Plaintiffs – from August 31, 2015 through September 15, 2015, and again in August of 2016, but did so in a manner that left Defendant's stores "without numerous products" and poorly stocked shelves resulting "in substantial [financial] losses" and cash flow problems for Defendant. Doc. no. 9. Defendant contends that Plaintiffs' alleged failure to perform a proper reset of Defendant's stores, and subsequent problems stemming therefrom, constitutes a breach of the October 14, 2016 agreements. Id.

**III. ANALYSIS**

The substantive law of North Carolina applies to all issues raised in the four motions.

**A. Plaintiffs' Motion for Summary Judgment as to Affirmative Claims**

The affirmative claims raised by Plaintiffs in their Complaint are at Count I, breach of contract, and at Count II, declaratory judgment seeking a decree that Defendant breached the October 14, 2016 MDI-PPA and the security agreement.

**1. North Carolina Contract Law**

In order to prove that a contract has been breached under North Carolina law, the Plaintiffs in the instant case must prove: (1) the existence of a valid contract, and (2) breach of the terms of the contract. *Hodges v. Young*, 209 N.C. App. 753, 710 S.E.2d 708 (2011). A valid contract may arise only where the parties assent and their minds meet as to all terms. This meeting of the minds requires an offer and acceptance of the same terms. *Turner v. Ellis*, 179 N.C. App. 357, 362, 633 S.E.2d 883, 887 (2006).

Defendant has admitted that the Parties entered into the October 14, 2016 MDI-PPA. However, Defendant also claims that the prior to this written agreement, the Parties commenced their business relationship on October 16, 2014, which included a loan for which there was no documentation. In addition, Defendant claims that Plaintiffs conducted a reset between August 31, 2015 and September 15, 2015. According to Defendant, Plaintiff failed to perform this reset in a competent manner which ultimately led to "substantial losses and cash flow issues" allegedly causing Defendant to enter into the October 14, 2016 MDI-PPA. Doc. no. 67-1, p. 5-6. See also doc. no. 9, ¶¶ 45-47, 52, 61.

Despite these contentions set forth in its discovery responses and Answer to the Complaint and Counterclaims, Defendant has admitted that it signed both: the October 14, 2016

MDI-PPA and the security agreement, at issue in this case. Importantly, Defendant never argued that there was dissent between the parties at the time of the formation of these documents, nor does Defendant contend that the Parties did not have a meeting of the minds as to all of the terms in these documents. Thus, a valid contract exists under North Carolina law.

## 2. Application of North Carolina Law to Contracts at Issue

Next, turning to the issue of whether this contract was breached by Defendant, North Carolina law requires this Court to looks to the terms of the contract itself. The October 14, 2016 MDI-PPA reads in relevant part:

> Whereas Purchaser [Defendant] has requested Capital Resources, LLC (herein "Capital") [Plaintiff], an affiliate of MDI, to loan Purchaser the sum of One Million Seven Hundred Thousand Dollars and No Cents ($1,700,000.00) (the "Loan") for the purpose of purchasing inventory and related products and services from MDI to be sold at retail in supermarkets operated by the Purchaser at one or more of the following locations: 210 Greater Butler Mart, Butler. Pennsylvania 16001; 270 West Water Street, Saxonburg, Pennsylvania 16056; 128 Hummingbird Plaza, Chicora, Pennsylvania 16025; and 122 West Brady Street, Butler, Pennsylvania 16001; . . .
> 
> \* \* \*
> 
> 2. <u>Purchases by Purchaser</u>.
> 
> (a) Beginning on the commencement date and continuing until this Agreement is terminated (such period being hereinafter referred to as the "Term"), MDI agrees that Purchaser shall have the right (but except as set forth in Section 2 (c) below, shall not be required) to purchase products from MD1, of such kinds, brands, and quantities as MDI may, from time to time during the Term, offer for sale to its normal customer base ("Products"). Purchaser shall also receive the proceeds and other benefits which MDI derives from vendors' promotional, free goods, or other allowances to the same extent as MDI may, from time to time, pass on such proceeds and other benefits to other customers purchasing similar quantities of Products.
> 
> \* \* \*
> 
> (d) Loan proceeds will be disbursed directly to MDI or held by Capital, at Capital's sole discretion. Thereafter, MDI may place Purchaser on terms which are as follows: Net seven (7) days payable by wire. Payment by wire transfer must be received by MDI no later than 12:00 o'clock noon on

Friday of the week following the week in which purchases were made. Any failure to wire funds as set forth herein shall be a default which immediately entitles MDI to pursue its legal remedies as set forth in Paragraph 7 below. MDI reserves the right to change payment terms if Purchaser is not in compliance with the terms of any of the Loan Documents defined in Paragraph 8 below.

\*     \*     \*

7. <u>Remedies</u>.

\*     \*     \*

(b) In the event Purchaser defaults by early termination of this Agreement or by ceasing to purchase product during the term of this Agreement, the parties agree that MDI shall be entitled to liquidated damages.

    (i) The liquidated damages shall be payable to MDI because a remedy at law would be inadequate, and it would be impracticable and extremely difficult to determine actual damage resulting to MDI in the event of default. The amount of liquidated damages will be an amount equal to two percent (2%) times the average of the Quarterly Requirements for the four (4) calendar quarters prior to the date the Agreement is terminated or Purchaser ceases to purchase products from MDI times the number of calendar quarters (or fractions thereof) remaining during the original term. If the default occurs during a renewal term the amount of liquidated damages will be an amount equal to two percent (2%) times the average of the Quarterly Requirements for the four (4) calendar quarters prior to the date the Agreement is terminated or Purchaser ceases to purchase products from MDI times the number of calendar quarters (or fractions thereof) remaining during the renewal term.

    (ii) If either the original term or a renewal term is extended because sums are owed by Purchaser to Capital or MDI, the liquidated damages calculated pursuant to (i) or (ii) above shall include a sum equal to two percent (2%) times the average of the Quarterly Requirements for the four (4) calendar quarters prior to the date the Agreement is terminated or Purchaser ceases to purchase products from MDI times each calendar quarter (or fraction thereof) until such amounts owed by Purchaser to Capital and/or MDI are paid in full, but not to exceed a period of twenty (20) calendar quarters.

    (iii) . . .

(c) In any suit for damages for breach of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees as part of the court costs pursuant to North Carolina General Statute Section 6-21.2.

8. Events of Default.
The happening of any of the following events will constitute default under this Product Purchase Agreement and all other obligations owed to Capital and/or MDI:

\* \* \*

(d) Failure to pay either principal or interest on the Loan, as and when due and payable;

(e) Failure to pay any indebtedness by Purchaser when due or the performance of any other obligation incurred in connection with any indebtedness for borrowed money of the Purchaser;

(f) Failure to observe any covenant, condition, or agreement on the part of the Purchaser;

(g) Failure to observe or perform any other covenant, condition, or agreement on the part of the Purchaser pursuant to the terms of any Loan Documents (hereinafter defined);

\* \* \*

(j) Final judgment for the payment of money in excess of Fifty Thousand Dollars ($50,000) shall be rendered against the Purchaser, and the same shall remain undischarged for a period of thirty (30) days during which execution shall not be effectively stayed.

9. Cross-Default. Failure to pay amounts due or failure to perform any obligation under this Product Purchase Agreement between Purchaser and MDI dated October 14, 2016, the Promissory Note from Purchaser to Capital dated October 14, 2016, the Security Agreement (including Purchase Money) from Purchaser to Capital dated October 14, 2016, the Security Agreement (including Purchase Money) from Purchaser to MDI dated October 14, 2016, the Loan Agreement between Purchaser and Capital dated October 14, 2016 (collectively, the "Loan Documents"), or default in the payment of any other obligations, present or future, owed by Purchaser to either MDI or Capital shall also be a default under the Loan Documents entitling MDI and/or Capital to declare an event of default, to accelerate the debt, and proceed under the Loan Documents. MDI and Capital, as their interests may appear, shall have the right, in their sole discretion, to apply amounts of collateral held by them to satisfy any indebtedness of Purchaser to either MDI or Capital. It is expressly agreed that collateral held by Capital may be used to satisfy indebtedness to MDI and collateral held by MDI may be used to satisfy indebtedness to Capital. Capital and/or MDI may accelerate any indebtedness and proceed under any of the Loan Documents executed by either Capital or MDI.

Doc. no. 1-2.

Based upon the above, this document simply states that Defendant was to pay for products it received from Plaintiffs. The document also required Defendant to pay Plaintiffs within the proscribed period of time, and if payment was late, Plaintiffs would be considered to be in default.

The Loan Documents, referenced in the above portion of the October 14, 2016 MDI-PPA, relate to the $1,700,00.00 loan which is also indicated in the opening clause of the above MDI-PPA. The MDI-PPA contains a cross-default provision (see section "9." in the above, MDI-PPA) which unambiguously indicates that if Defendant were to default under the MDI-PPA, then Defendant would be in default under the corresponding Loan Documents.

There is no dispute in this case that Defendant and Plaintiffs entered into the October 14, 2016 MDI-PPA regarding the provision of wholesale grocery products and the corresponding Loan Documents regarding the lending of money by Plaintiffs to Defendant. See doc. no. 9, ¶ 7. Defendant also admits in its Answer to the Complaint that these documents, which govern the contractual relationship between the Parties, "speak for themselves." See doc. no. 9, ¶¶ 8-13. In addition, Defendant's Answer further admits that Plaintiffs notified Defendant of Defendant's contractual default. Id. at ¶¶ 28-29.

Accordingly, the Court finds that based on the clear and unambiguous terms of the October 14, 2016 MDI-PPA, and given the uncontested relevant facts, Defendant is liable to Plaintiffs for Breach of Contract. Thus, the Court will grant Plaintiffs' Motion for Summary Judgment as to their Affirmative Claims.

**B. Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims**

In their Joint Concise Statement of Facts, Defendant admitted that it received certain invoices from Plaintiffs, but Defendant essentially claims it was not obligated to pay those invoices because Plaintiffs "excused [Defendant's] performance by failing to properly perform resets at [Defendant's] four stores." Doc. no. 83, p. 8. As noted by Defendant in their Affirmative Defenses (doc. no. 9), this reset took place from August 31, 2015 through September 15, 2015 – a time period which predates the PPA-MDI. Defendant also alleges that another reset was done, over Defendant's objection in August of 2016. Doc. no. 69, p. 8.

Simply put, Defendant's sole argument and defense in this case turns on an event that took place in September of 2015 (and possibly August 2016). Assuming that Defendant is correct and the reset performed in 2015 (and/or the reset performed in August of 2016), ultimately caused Defendant to sustain financial losses, this reset(s) does not alter the fact that the contracts Defendant willing entered into with Plaintiffs, in October of 2016, were silent as to the impact of any earlier reset(s).[1]

This Court has already determined that October 14, 2016 MDI-PPA does not "contain any provision concerning a 'reset' or impose duties regarding the same." Doc. no. 27. Under UCC 2-207(2), additional terms that materially alter the agreement do not become part of the contract. See also, N.C. Gen. Stat. § 25-2-207 (2).

Defendant has presented no evidence to the Court which suggests that additional terms relating to Plaintiffs' alleged reset obligations or reset outcomes are part of the October 14, 2016

---

[1] The Court is aware that the Parties claim that a "2015 Product Purchase Agreement" existed among them. However, this "2015 Product Purchase Agreement" is not before the Court. Plaintiffs' Complaint and cause of action for breach of contract and their request for a declaration are solely predicated upon the alleged breach of the October 14, 2016 MDI-PPA, and the Defendant has not alleged a breach of a "2015 Product Purchase Agreement."

agreements placed at issue in this litigation. Thus, this Court finds that a "reset" and any resulting consequences which purportedly flowed from a reset are not relevant to the determination of this matter.

Therefore, finding no merit to Defendant's defense, this Court will grant Plaintiffs' Motion for Summary Judgment as to Defendant's Counterclaims.

## IV. CONCLUSION

The Court's decision as set forth above, which grants Plaintiffs' Motion for Summary Judgment on their Affirmative Claims and grants Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaims, effectively renders the two Motions relating to the expert reports as moot, and thus, those Motions will be denied. An appropriate Order will follow.

Dated: 10/01/2018

                                                       s/ Arthur J. Schwab
                                                      Arthur J. Schwab
                                                      United States District Judge

cc:      All ECF Registered Counsel of Record